UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Sunlight Solutions, LLC.,

                              Plaintiff,

                                                                          Hon. Hugh B. Scott

                         v.                                                06CV683A


                                                                          **Report &
                                                                          Recommendation**

Howard Birnbaum,
T/A Homegrown Hydroponics,

                              Defendants.


_____


         Before the Court is the defendants motion to dismiss the complaint (Docket No. 6).



                              **Background**

         The plaintiff, Sunlight Solutions, LLC ("Sunlight") initiated this action asserting

copyright infringement claims against the defendants, Howard Birnbaum T/A Homegrown

Hydroponics ("Birnbaum").   Sunlight asserts it is the sole owner of a copyright to a certain

"Retail Store Image, Vau 671-786 " (hereafter referred to as the "Storefront Image").  Sunlight

claims that Birnbaum used Sunlight's Storefront Image on Birnbaum's web cite.  The plaintiff

also alleges that it is the owner of trademarks "Sunlight Solutions," "Sunlight Sheds," "Caddy,"

and "Cool Cab."  Sunlight claims that Birnbaum impermissibly used these protected trademarks

in advertising Birnbaum's products.  Sunlight seeks relief and damages under 17 U.S.C. §§ 503,

504, 505, 1202 and 1203 and other federal statutes.

More specifically, Sunlight asserts that at an unknown point in time, Birnbaum copied

the protected "Storefront Image" graphic used by Sunlight, modified it to delete the business

name of Sunlight and replace Sunlight's name with the name of the defendant's business making

it appear that Sunlight had changed its name. (Docket No. 1 at ¶ 12).   According to Sunlight, in

this manner Birnbaum sold merchandise to New York residents via the internet.  Sunlight further

asserts that Birnbaum impermissibly utilized or "mis-affiliated" Sunlight's copyright protected

trademarks including "Sunlight Solutions", "Sunlight Sheds", "Caddy" and "Cool Cab" (Docket

No. 1 at ¶¶ 31-41).

Birnbaum contends that while setting up a web site for his business he searched

"Google Images" for a photographic representation of a storefront and selected the "Storefront

Image" from amongst the results page.  Birnbaum asserts that at that time he had no knowledge

of Sunlight and that he selected the image under the belief that it was available for public use.

(Docket No. 6-2 at ¶¶ 12-14).[1]  The defendant has moved to dismiss the complaint alleging a

lack of jurisdiction. (Docket No. 6).  The defendant, who is a resident of Florida,  argues that the

complaint does not allege a basis to find that the Court has personal jurisdiction over Birnbaum

---

[1]  The plaintiff asserts that Birnbaum was familiar with Sunlight's business and that
Birnbaum spoke to the plaintiff about the plaintiff's web site. According to Sunlight, Birnbaum
utilized two different images found on Sunlight's web site and "devised an ad campaign
targeting at least seven of the trademarks found on and used in plaintiff's web site."  Sunlight
also asserts that there is a copyright notice on the Google images page. (Docket No. 12 at page 2,
n.5).  Further, Sunlight contends that Birnhaum's web marketing strategy utilizes Google
"adwords" which direct customers to Birnbaum's web site even though the customer inputted
searched terms, including copyrighted trademarks, for Sunlight's products.  (Docket No. 12 at
page 4-7).

pursuant to either §301 or §302 of the New York Civil Practice Law and Rules ("C.P.L.R.").

Further, the defendants assert that venue is not proper in the Western District of New York under

28 U.S.C. §1406.

**Discussion**

**Timeliness of Motion to Dismiss**

The plaintiff argues that the instant motion to dismiss is untimely.  (Docket No. 12 at

page 11).  Rule 12(a)(1)(A) provides that an answer be filed within 20 days after being served

with a summons and complaint.  Rule 12(b) provides that the basis for a motion to dismiss shall

be asserted in the responsive pleading or advanced by motion prior to pleading.

The docket reflects that Birnbaum was served with a summons and complaint in this

matter on November 15, 2006. An Affidavit of Service was filed on December 5, 2006 (Docket

No. 3).  A notice of appearance and motion to dismiss were filed on behalf of Birnbaum on April

12, 2007 (Docket Nos. 5 and 6) – more than 20 days after service of the summons and complaint.

However, the plaintiff acknowledges that it gave Birnbaum "two extensions" but that the

extensions expired prior to the filing.  (Docket No. 12 at page 12). Birnbaum asserts that it

procured an extension of time to answer, and thus, the defense of lack of personal jurisdiction is

not waived. Further, Birnbaum claims that the plaintiff agreed to an unspecified extension of

time while the parties discussed a possible resolution of this case. (Docket No. 19 at pages 5-6).

Because it is preferable to resolve the instant motion to dismiss on the merits, the Court

need not attempt to resolve this dispute.

**Personal Jurisdiction**

The resolution of a motion to dismiss for lack of personal jurisdiction requires a two-step analysis. First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant, which in this case could only be possible under the New York long-arm statute, C.P.L.R. §302. If there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d. Cir. 2002).

The record does not reflect the extent of discovery had in connection with the instant motion. While plaintiff bears the burden of showing that the court has jurisdiction over the defendant (Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996)), at the pre-discovery stage the plaintiff defeats the motion simply by pleading in good faith legally sufficient allegations of jurisdiction-i.e., by making a prima facie showing that jurisdiction exists.  In such a case, "all allegations [in the complaint] are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir.1993).

The complaint alleges that the Court has  jurisdiction over the defendant inasmuch as:

> The defendant transacted business in New York State, purposefully availed himself of the benefits of the New York forum, committed tortious acts all or part of which took place in New York State; this cause of action arises out of the specific business and tortious conduct transacted in or taking place in New York State, and out of conduct which caused consequences in New York State. Defendant is subject to service of process pursuant to Rule 4, Federal Rules of

Civil Procedure.

(Docket No. 1 at ¶ 5).

Rule 4(k) of the Federal Rules of Civil Procedure allows for service effective to establish

jurisdiction upon any person who could be subjected to the jurisdiction of a court of general

jurisdiction in the state in which the district court is located.  C.P.L.R. §302 provides:

> (a) Acts which are the basis of jurisdiction. As to a cause of action
> arising from any of the acts enumerated in this section, a court may
> exercise personal jurisdiction over any non-domiciliary, or his
> executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to
> supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of
> action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person
> or property within the state, except as to a cause of action for
> defamation of character arising from the act, if he
>
> (i) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have
> consequences in the state and derives substantial revenue from
> interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the
> state.

It is not disputed that Birnbaum is not a New York resident.  Sunlight argues that

jurisdiction exists over Birnbaum under C.P.L.R. §302(a)(1), §302(a)(2) and §302(a)(3). [2]

---

[2]   Sunlight does not argue that jurisdiction exists under C.P.L.R. §301.

In <u>Citigroup Inc. v. City Holding Co.</u>, 97 F.Supp.2d 549 (S.D.N.Y.2000), the Court found

that the various uses of an internet web site fall within three basic categories along a spectrum.

At one end of the spectrum are the uses of the internet where the "defendant makes information

available on what is essentially a 'passive' web site" and the defendant's use of the web site is

akin to taking out an advertisement in a newspaper with national circulation. <u>Id</u>. at 565. The use

of a passive web site traditionally did not create personal jurisdiction over a defendant under

§302(a)(1). <u>Id</u>. (collecting cases). The other end of the spectrum are those cases where the

defendant "clearly does business over the internet, and where it knowingly and repeatedly

transmits computer files to customers in other states ." <u>Id</u>. This category can be the basis for

specific jurisdiction under § 302(a)(1) for a claim arising from that business activity. The third

category of internet activity that the Court identified was a "middle category" on the spectrum

where "the defendant maintains an interactive web site which permits the exchange of

information between users in another state and the defendant." <u>Id</u> . The existence of jurisdiction

in this middle category of cases depends on the nature and the frequency of activity of the

defendant.  <u>Realuyo v. Villa Abrille,</u>  2003 WL 21537754, *6 (S.D.N.Y.,2003).

It appears that there is no dispute that Birbaum's web site is highly interactive.

Customers in New York can access Birnbaum's web site to directly order merchandise; to

contact Birnbaum; to link directly to a New York based distributor from whom then can

purchase Birnbaum's products.  (Docket No. 12 at page 17).  Sunlight asserts, and Birnbaum

does not dispute, that the defendant's internet marketing plan targeted New York customers.

(Docket No.  12 at page 17-18).   In the instant matter, Birnbaum admits that he has filled at least

"7 internet-based sales orders from hydroponics products which were shipped to customers in

New York." (Docket No. 6-1 at page 7). However, Birnbaum asserts that Sunlight's copyrighted

image was removed from Birnbaum's web site prior to the first sale by Birnbaum. (Docket No.

6-2 at page 7).  Although Birnbaum acknowledges that §302 of the C.P.L.R.  is a "single act

statute," the defendant asserts that jurisdiction does not exist over him because there is no

"substantial relationship" between any of Birnbaum's transactions in New York and the asserted

claims by Sunlight. (Docket No. 6-1 at page 7-8).

As quoted above, under CPLR §302(a)(1), a court may exercise personal jurisdiction

over a non-domiciliary defendant if that defendant "transacts any business within the state or

contracts anywhere to supply goods or services in the state," as long as "the claim arises out of

the transaction." Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 564 (S.D.N.Y.,2000)

citing Pilates, Inc. v. Pilates Institute, Inc., 891 F.Supp. 175, 179 (S.D.N.Y.1995); Kreutter v.

McFadden Oil Corp., 71 N.Y.2d 460, (1988); and Parke-Bernet Galleries, Inc. v. Franklyn, 26

N.Y.2d 13, 308 N.Y.S.2d 337 (1970).  It is not clear from the record, that the plaintiff's

copyright and trademark claims can be said to arise from Birnbaum's New York transactions, as

opposed to the creation and maintenance of Birnbaum's web site.  Also, Sunlight's reliance upon

Citigroup for the proposition that jurisdiction exists under C.P.L.R. §302(a)(2) in that Birnbaum

committed a tortious act within New York State is misplaced (see Docket No. 12 at page 22-23).

In Citigroup, the Court found that jurisdiction existed under C.P.L.R. §302(a)(2) based upon the

fact that the defendant sent direct mailings to New York containing the allegedly infringing

marks, and thus, the allegedly infringing marks were received and viewed in New York.  The

court expressly held that jurisdiction would *not* attach based solely upon the display of the

allegedly infringing marks on the defendant's web site.  Citigroup, 97 F.Supp. 2d. at 567.   The

Court explained:

> The import of the City National web sites displaying allegedly
> infringing mark is more complicated. The mere existence of these
> web sites does not confer jurisdiction under CPLR § 302(a)(2).
> Although it is in the very nature of the internet that the allegedly
> infringing marks contained in these web sites can be viewed
> anywhere, this does not mean that the infringement occurred
> everywhere. Instead, courts have held that in the case of web sites
> displaying infringing marks the tort is deemed to be committed
> where the web site is created and/or maintained. ... This rule may
> seem incongruous when juxtaposed with the rule applicable to
> ordinary infringing goods, which is that "the wrong takes place not
> where the deceptive labels are affixed to the goods or where the
> goods are wrapped in the misleading packages, but where the
> passing off occurs." German Educational Television Network, Ltd.
> v. Oregon Public Broadcasting Co., 569 F.Supp. 1529, 1532
> (S.D.N.Y.1983). A rationale for the difference may be that literal
> application of the "where viewed" rule would result in jurisdiction
> anywhere in the world in every infringement case involving a web
> site.  There is no evidence that the City Lending and City
> Mortgage web sites were created in New York or are maintained
> on New York servers. Thus, the mere display of the CITY marks
> on these web sites cannot be deemed a tort committed within this
> State.

Citigroup, 97 F.Supp. 2d at 567. Unlike the facts in Citigroup, Sunlight does not allege that

Birnbaum mailed products or materials to New York residents containing the alleged

misappropriated copyrights and trademarks.

However, jurisdiction over Birnbaum in New York does exist under C.P.L.R. §302(a)(3).

This provision confers jurisdiction over a defendant where the cause of action arises from a tort

committed outside of New York but the tort causes harm within New York, the defendant

expected or should reasonably have expected the act to have consequences in the state, and the

defendant derives substantial revenue from interstate or international commerce. See CPLR §

302(a)(3).   The alleged tortious activity, the creation and maintenance of Birnbaum's web site

containing the alleged infringing copyrights and trademarks, took place outside of New York but

caused harm within New York State.  Once again Citigroup is instructive:

> Injury within the state includes harm to a business in the New
> York market in the form of lost sales or customers. See American
> Network, Inc. v. Access America/Connect Atlanta, 975 F.Supp.
> 494, 497 (S.D.N.Y.1997) (citations omitted). This rule is satisfied
> by Citigroup's claim that its actual and potential customers in New
> York are confused or deceived when they view and interact with
> the City National web sites. ... Furthermore, it was reasonably
> foreseeable that publication of web sites with the offending marks
> would have consequences in New York.

Citigroup, 97 F.Supp.2d at 568.  Similarly, in the instant case, Sunlight alleges harm to its

business in New York due to the alleged infringing activities by Birnbaum.  At this pleading

stage of the litigation, the Court is to view the plaintiff's allegations in a favorable light.  In this

regard, Sunlight contends that Birnbaum was familiar with the plaintiff's business; that he

emailed and spoke with plaintiff about establishing links; he visited the plaintiff's web site; he

determined that the plaintiff's "url" should be taken; he took two images from the plaintiff's web

site; he ascertained that there were various trademark terms he was going to register with

Adwords; and he devoted a substantial part of his ad campaign and web site to a discussion of

the plaintiff's products. (Docket No. 12 at page 25).   Finally, Birnbaum does not appear to

dispute that he derives substantial revenue from interstate commerce.  Sunlight alleges that over

a ten month period in 2006, Birnbaum sold products to customers in at least 35 different states

outside of his home state and that 78% of Birnbaum's customers were outside the state of Florida

(Sunlight alleges that 12% of Birnbaum's customers reside in New York). (Docket No. 12 at

page 25).

    Based on the above, a statutory basis for jurisdiction exists over Birnbaum in New York

under C.P.L.R. §302(a)(3).


**Due Process**

The exercise of personal jurisdiction under a state long-arm statute comports with

constitutional due process only if the defendant has "certain minimum contacts with [the forum]

such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945);

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Chew v. Dietrich, 143

F.3d 24, 28 (2d Cir.1998).  As discussed above, Birnbaum maintains a highly interactive web

site which offers products for sale to New York residents; has expressly identified New York as

a target in his marketing; maintains links to New York based suppliers and "affiliates" on his

web site (see Docket No. 12, exhibit 8).  In addition, construing the allegations in favor of the

plaintiff at this pleading stage, Birnbaum is alleged to have infringed various copyrights and

trademarks thereby affecting the business of Sunlight in New York.  Thus, the assertion of

personal jurisdiction over Birnbaum would not offend the standards of due process. Citigroup,

97 F.Supp. 2d at 569; Cenage Learning, Inc. v. Buckeye Books , 2008 WL 194747, *3

(S.D.N.Y.,2008).


**Venue**

Birnbaum argues that the Western District of New York is an improper venue for the

claims in this matter pursuant to 28 U.S.C. §1400.  Section 1400 deals with the venue for civil

actions relating to copyright and trademark claims.  The provision states:

      (a) Civil actions, suits, or proceedings arising under any Act of
Congress relating to copyrights or exclusive rights in mask works
or designs may be instituted in the district in which the defendant
or his agent resides or may be found.

It is widely held that a defendant "may be found" in any district possessing jurisdiction over his person. Haaretz Daily Newspapers, Ltd. v. Maariv Modiin Pub. Co., Ltd., 1999 WL 796163, at *2 (S.D.N.Y.1999). Because venue is coextensive with personal jurisdiction, a defendant whose contacts in this district satisfy New York's long-arm statute is therefore "found" here for venue purposes. Roberts v. Keith, 2007 WL 2712853 ( S.D.N.Y.  2007); CAVU Releasing, LLC. v. Fries, 419 F.Supp.2d 388, 394 (S.D.N.Y.2005);  Linzer v. EMI Blackwood Music, Inc., 904 F.Supp. 207, 215 (S.D.N.Y.1995); Pfaff v. Denver Art Museum, 1995 WL 373489, at *3 (S.D.N.Y. 1995); World Film Services, Inc. v. RAI Radiotelevisione Italiana S.p.A., 1999 WL 47206, at *7 (S.D.N.Y. 1999); Crescent Publishing Group v. American Video Corp., 1996 WL 143928, at *2 (S.D.N.Y. 1996).

The inquiry under §1400(a) focuses on whether the jurisdictional contacts relied upon are specific to the district in which the case is brought, not merely the state in which the district court sits. The question, then, is whether Birnbaum is amenable to personal jurisdiction in this district. Roberts, 2007 WL 2712853 at *6.  Although only one of Birnbaum's sales to New York residents involved a resident within the Western District of New York, all of the remaining contacts which serve as the basis for long-arm jurisdiction in New York involve activities within the Western District of New York. Among them are the fact that Birnbaum's web site lists an "affiliate program" involving a business located within the Western District of New York (see Docket No. 12, Exhibits 8 and 9); that Birnbaum is alleged to have contacted the plaintiff and is

alleged to have taken images from the plaintiff's web site and to have otherwise engaged in allegedly tortious activity affecting the plaintiff's business which is located within the Western District of New York.  This is sufficient to establish that venue of this matter is appropriate in the Western District of New York.

The defendant also asserts that venue should be transferred based upon the *forum non conveniens* doctrine.  Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) thus supplanted the common law doctrine of forum *non conveniens* for transfers between United States district courts.  Capital Currency Exchange, N.V. v. National Westminster Bank PLC,  155 F.3d 603, 607 (2d Cir. 1998) citing Fitzgerald v. Westland Marine Corp., 369 F.2d 499, 501 n. 3 (2d Cir.1966).   Whether to transfer a case under §1404 lies wholly within the broad discretion of the district court.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964);  In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992) ("[M]otions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness....");see also  Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 46 (2d Cir.1996); Capital Currency Exchange, N.V. v. National Westminster Bank PLC,  155 F.3d 603, 609 (2d Cir.  1998).  "The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not

disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing

that the balance of convenience favors defendants' choice."  Linzer, 904 F.Supp. at 216 (quoting

Hubbell Inc. v. Pass & Seymour, Inc., 883 F.Supp. 955, 962 (S.D.N.Y.1995). "The defendant

moving for a transfer must, therefore, demonstrate 'that transfer is in the best interests of the

litigation." ' Linzer, 904 F.Supp. at 216 (quoting Eskofot A/S v. E.I. du Pont de Nemours & Co.,

872 F.Supp. 81, 95 (S.D.N.Y.1995)).

In determining whether transfer is appropriate, the court may consider the following

factors: (a) the convenience of witnesses; (b) the convenience of the parties; (c) the locus of

operative facts; (d) the location of relevant documents and relative ease of access to sources of

proof; (e) the availability of process to compel the attendance of unwilling witnesses; (f) the

forum's familiarity with the governing law; (g) the relative financial means of the parties; (h) the

weight afforded plaintiff's choice of forum; and (i) trial efficiency and the interests of justice. In

re Stillwater Mining Co. Sec. Litig., 2003 WL 21087953, at *3 (S.D.N.Y.  2003); Ravenwoods

Invest. Co., L.P. v. Bishop Capital Corp.,  2005 WL 236440, *3  (S.D.N.Y.,2005).  No one factor

is controlling or determinative, rather the Court must , in its discretion, balance all of the factors

in making its decision.  Praxair, Inc. v. Morrison Knudsen Corp., 2001 WL 118585, *2

(W.D.N.Y.  2001).

In this instant matter, Birnbaum does not specifically discuss the particular factors

enumerated above, but asserts, generally, that "litigation in the Southern District of Florida

would better serve the interests of justice" inasmuch as the "operative facts underlying the

instant action" occurred within that district and that litigating this matter within the Western

District of New York is "extremely inconvenient" to Birnbaum. (Docket No. 6-1 at page 14).  It

is undisputed that the creation and maintenance of Birnbaum's web site took place in Florida.

However, the "locus" of the operative facts is often difficult to ascertain in a case based upon

conduct transacted via the internet. More importantly, the actual "locus" in such cases is often of

less significance than in other types of matters where the physical attributes of the location of the

events underlying the claims may be relevant to the claims themselves (i.e. cases involving

accidents, personal injury or negligence).  Here, Birnbaum has not established that the fact that

he created and maintained his web site in Florida (as opposed to New York or anywhere else) is

significant to the claims in this case.  Further, Birnbaum has not established that any

inconvenience he may experience by litigating this matter in the Western District of New York is

greater than the inconvenience the plaintiff would experience litigating this matter in the

Southern District of Florida.  Based upon the record before the Court, the factors including the

convenience of witnesses, the convenience of the parties,  the location of relevant documents and

relative ease of access to sources of proof,  the availability of process to compel the attendance

of unwilling witnesses, the forum's familiarity with the governing law,  the weight afforded

plaintiff's choice of forum; and trial efficiency and the interests of justice all suggest that venue

of this matter in the Western District of New York is appropriate.

**Conclusion**

Based upon the forgoing, it is recommended that the defendant's motion to dismiss and

for a transfer of venue be DENIED.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation

be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report &

Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

**Clerk of this Court within ten(10) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the**

**Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO**

**FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER**

**BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED**

**HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.

Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir.

1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil

Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v.

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written

objections shall specifically identify the portions of the proposed findings and recommendations

to which objection is made and the basis for such objection and shall be supported by legal

authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the**

**District Court's refusal to consider the objection.**

       So Ordered.


                                      /s/  *Hugh B. Scott*

                                       United States Magistrate Judge
                                       Western District of New York

Buffalo, New York
February 21, 2008